

CLERK OF THE
DISTRICT COURT
RISTIE LEE BOELTER

'16 DEC 12  AM 9 19

**IN THE SUPREME COURT OF THE STATE OF MONTANA**
**THE OFFICE OF THE CLERK OF SUPREME COURT**
**HELENA, MONTANA 59620-3003**

December 8, 2016

**REMITTITUR**

Supreme Court Case No. DA 16-0013
District Court Case No. DV-15-0511

PETER BYORTH and ANN McKEAN,
on behalf of themselves and all
those similarly situated,
                    Plaintiffs and Appellees,

        v.

USAA CASUALTY INSURANCE
COMPANY, and JOHN DOES I-X,
                    Defendants and Appellants.

This case was a review of the order/judgment of the District Court.

IT IS ORDERED by the Supreme Court in an opinion, that the decision of the District Court is Reversed and Remanded.

The appeal record is hereby returned to the Clerk of District Court of Yellowstone County District Court.

I certify that the attached is a true and correct copy of the opinion filed by the Supreme Court on November 22, 2016.

                    Sincerely,

                    ED SMITH
                    Clerk of the Supreme Court

DA 16-0013

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 302

PETER BYORTH and ANN McKEAN,
on behalf of themselves and all
those similarly situated,

      Plaintiffs and Appellees,

v.

USAA CASUALTY INSURANCE
COMPANY, and JOHN DOES I-X,

      Defendants and Appellants.

FILED

NOV 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-15-0511
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Ian McIntosh, Kelsey E. Bunkers, Crowley Fleck, PLLP, Bozeman,
Montana

            Jessica G. Scott, Wheeler Trigg O'Donnell LLP, Denver, Colorado

      For Appellees:

            John Heenan, Colette B. Davies, Bishop & Heenan, Billings, Montana

Submitted on Briefs: August 24, 2016

Decided: November 22, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    USAA Casualty Insurance Company (USAA) appeals from an order of the Thirteenth Judicial District Court in Yellowstone County certifying a class action pursuant to M. R. Civ. P. 23.  We reverse the order of the District Court and remand for further proceedings.

## ISSUES

¶2    The question on appeal is whether the District Court abused its discretion in certifying the class pursuant to M. R. Civ. P. 23.  Following the structure of Rule 23, we divide this question into two issues:

> 1. *Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(a)?*
>
> 2. *Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(b)(3)?*

## BACKGROUND

¶3    In September 2011, Peter Byorth was struck by a motor vehicle while riding his bicycle.  He was insured at the time by USAA under an auto insurance policy that provided $10,000 in medical payment coverage.  Byorth submitted medical payment claims totaling $85,000, which USAA then sent to Auto Injury Solutions (AIS) for review.  Due to an alleged coding error in the paperwork AIS required Byorth's physician to complete, USAA initially denied Byorth's claims as medically unnecessary.  However, USAA eventually paid policy limits to Byorth.

¶4    Ann McKean was also insured under a USAA auto insurance policy that provided medical payments coverage.  In February 2014, McKean was injured in a motor vehicle

accident and incurred damages far greater than her policy limits. McKean submitted her medical bills to USAA, and USAA forwarded them to AIS for review. AIS allegedly determined several procedures McKean underwent were not medically necessary, and USAA subsequently denied coverage.

¶5   On April 24, 2015, Byorth and McKean filed a complaint against USAA alleging breach of fiduciary duties, breach of contract, and violations of the Unfair Trade Practices Act, § 33-18-201, MCA (UTPA). Plaintiffs argued USAA's practice of sending medical claims to AIS was "an improper cost containment scheme designed to wrongfully deprive Montana consumers of their first-party medical pay benefits." Plaintiffs sought to recover actual and punitive damages and to enjoin USAA from submitting future claims to AIS for review.

¶6   On June 11, 2015, USAA removed the matter to federal court. While the case was before the federal court, USAA filed its answer, wherein USAA denied all allegations relating to AIS's role in adjusting medical claims. The federal court ultimately determined that it lacked subject matter jurisdiction, and the case returned to the District Court. On November 19, 2015, Plaintiffs filed a motion to certify the proposed class. Six days later, USAA filed a motion to strike the class allegations from Plaintiff's complaint. On December 15, 2015, USAA filed its response in opposition to certification. The District Court issued its order certifying the class two weeks later, on December 29.

¶7   Plaintiffs' motion and brief in support of class certification recited many of the allegations of their complaint. In its motion to strike the class allegations from the

complaint, USAA argued that the class was unascertainable, that individual issues predominated over common issues, and that a class action was not the superior method of litigation. USAA reasoned that no amount of discovery would ever show that Plaintiffs' class could overcome these deficiencies and satisfy the requirements of Rule 23.

¶8     In response to USAA's motion to strike, Plaintiffs repeated their allegations regarding AIS's role in reviewing medical claims. To support these allegations, Plaintiffs appended two exhibits to their brief. First, Plaintiffs provided an August 6, 2009, National Association of Insurance Commissioners (NAIC) memorandum (hereinafter the NAIC memo) discussing the status of *Horton v. USAA Casualty Ins. Co.*, No. CV-06-02810-PHX-DGC (D. Ariz.), a class action alleging USAA relied on AIS payment recommendations to pay less than the full amount owed on medical claims. Plaintiffs also provided an excerpt from a proposed settlement agreement dated May 27, 2008, wherein USAA denied the *Horton* class allegations but stipulated to a class for settlement purposes. The NAIC memo indicates the parties were scheduled to file an amended settlement agreement by November 6, 2009. Plaintiffs did not provide evidence of a final settlement in *Horton*.

¶9     Second, Plaintiffs provided the District Court with an undated excerpt from a Washington Superior Court's order approving a class settlement in *MySpine, PS v. USAA Casualty Ins. Co.*, No. 12-2-32635-5 SEA (Wash. Super. Ct.). The settlement class in *MySpine* included USAA insureds who had medical claim payments reduced due to certain "Reason Codes." The excerpt does not mention AIS, nor does it explain what a "Reason Code" is or if the codes were used erroneously.

¶10   In its December 15 brief in opposition to class certification, USAA provided medical payment logs for Byorth and McKean and the results of an AIS review of one of McKean's claims.  The payment logs list the dates USAA received claims from Byorth and McKean, as well as the dates USAA issued payments under the respective insurance policies.  The logs indicate USAA did not pay many of the claims submitted, but they do not include any reason for the denials.  The AIS review relates to coverage of an MRI McKean received.  The review is signed by a physician who reviewed documentation submitted with the claim and concluded the MRI was "medically reasonable or necessary."  The physician therefore recommended payment of the claim.

¶11   The District Court's certification order concluded that "all members of the proposed class, including Byorth and McKean, were subject to the same claims processing procedure of outsourcing claims to AIS."  Thus, the common question for the class was "[w]hether or not USAA violated Montana law with respect to its med-pay claims handling practices."   The District Court reasoned that although additional litigation may be needed to determine each class member's damages, the threshold question of unfair trade practices could be resolved in a single stroke.  The District Court therefore certified the class as follows:

> Under Mont. R. Civ. P. 23(b)(3) the Court certifies the following class: (a) all Montana consumers who (b) were insured by USAA for med pay benefits and (c) who submitted a claim for med pay benefits from April 2007 to April 2015, and (d) had their claim denied in whole or in part following a "file review" by AIS or because of an asserted "coding error."

¶12    The District Court analyzed each of the four elements of Rule 23(a), but did not explicitly address the requirements of Rule 23(b)(3).  USAA promptly appealed from the certification order in accordance with Rule 23(f).

## STANDARD OF REVIEW

¶13    We review a district court's decision on a motion for class certification for an abuse of discretion.  *Sangwin v. State*, 2013 MT 373, ¶ 10, 373 Mont. 131, 315 P.3d 279 (citing *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193).  The question is not whether this Court would have reached the same decision, but whether the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason.  *Sangwin*, ¶ 10 (citing *Chipman*, ¶ 17).  We afford trial courts the broadest discretion because they are "'in the best position to consider the most fair and efficient procedure for conducting any given litigation.'"  *Sangwin*, ¶ 10 (quoting *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452).  Certification orders are usually made in the early stages of litigation, when discovery is still underway and facts are disputed.  Because of this timing, and the trial court's power to modify a class after certification pursuant to Rule 23(c)(1)(C), we are generally reluctant to supplant the trial court's certification decision.  *Diaz v. State*, 2013 MT 219, ¶ 20, 371 Mont. 214, 308 P.3d 38 (*Diaz II*).  A district court's interpretation of procedural rules, like Rule 23, is a matter of law that we review de novo for correctness.  *See In re Estate of Strange*, 2008 MT 158, ¶ 6, 343 Mont. 296, 184 P.3d 1029.

## DISCUSSION

¶14   *1.   Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(a)?*

¶15   Rule 23(a) establishes four prerequisites to class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

M. R. Civ. P. 23(a).   These four prerequisites are respectively known as numerosity, commonality, typicality, and adequacy of representation.   The absence of any one prerequisite is fatal to certification.   *Jacobsen*, ¶ 28 (citing *Chipman*, ¶ 43).   These prerequisites "'ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate' and 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'"   *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 18, 368 Mont. 1, 291 P.3d 1209 (*Mattson III*) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550 (2011)) (alteration in original).

¶16   The party seeking certification bears the burden of showing the proposed class satisfies all four prerequisites of Rule 23(a).   *Roose v. Lincoln Cnty. Emple. Group Health Plan*, 2015 MT 324, ¶ 16, 381 Mont. 409, 362 P.3d 40.   When evaluating a proposed class, a trial court may need to probe beyond the pleadings to determine whether the class is suitable for certification.   *Sangwin*, ¶ 15.   In this way, certification entails a "rigorous analysis," which may touch the merits of the class claim.   *Worledge v.*

7

*Riverstone Residential Grp., LLC*, 2015 MT 142, ¶ 23, 379 Mont. 265, 350 P.3d 39;

*Sangwin*, ¶ 15.  At the same time, we have cautioned district courts against assessing

"any aspect of the merits unrelated to a Rule 23 requirement."  *Sangwin*, ¶ 15 (citing

*Chipman*, ¶ 44).  We have explained this analysis with the following framework:

> (1) a district judge may certify a class only after making determinations that
> each of the Rule 23 requirements has been met; (2) such determinations can
> be made only if the judge resolves factual disputes relevant to each Rule 23
> requirement and finds that whatever underlying facts are relevant to a
> particular Rule 23 requirement have been established and is persuaded to
> rule, based on the relevant facts and the applicable legal standard, that the
> requirement is met; (3) the obligation to make such determinations is not
> lessened by overlap between a Rule 23 requirement and a merits issue, even
> a merits issue that is identical with a Rule 23 requirement; (4) in making
> such determinations, a district judge should not assess any aspect of the
> merits unrelated to a Rule 23 requirement; and (5) a district judge has
> ample discretion to circumscribe both the extent of discovery concerning
> Rule 23 requirements and the extent of a hearing to determine whether such
> requirements are met in order to assure that a class certification motion
> does not become a pretext for a partial trial of the merits.

*Jacobsen*, ¶ 29 (quoting *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 67, 352 Mont.

212, 215 P.3d 675 (*Mattson II*)).  Admittedly, the precise burden at the certification stage

has been muddled.  In *Morrow v. Monfric, Inc.*, 2015 MT 194, 380 Mont. 58, 354 P.3d

558, this Court stated that "[p]laintiffs must actually prove that they have satisfied the

prerequisites for class certification."  *Morrow*, ¶ 10.  Four months later, we stated in

*Roose* that "the class action proponent need not prove each element with absolute

certainty."  *Roose*, ¶ 14.

¶17   Relevant precedent establishes two fundamental standards for the "rigorous

analysis" of class certification.  First, the trial court must have *some evidentiary basis* for

determining each Rule 23 requirement is satisfied.  *Comcast Corp. v. Behrend*, ___ U.S.

8

___, 133 S. Ct. 1426, 1432 (2013) (proposed class must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)"); *Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶ 31, 363 Mont. 151, 159, 267 P.3d 756 (*Diaz I*) (proposed class must present evidence or reasonable estimate of numerosity). "'Rule 23 does not set forth a mere pleading standard.'" *Chipman*, ¶ 44 (quoting *Wal-Mart*, 564 U.S. at 350, 131 S. Ct. at 2551). Thus, a district court may not simply rely on the allegations of the parties' pleadings. *Morrow*, ¶ 10 ("speculation or conclusory allegations are not sufficient"); *Sangwin*, ¶ 15 ("Actual, not presumed, conformance with Rule 23(a) is indispensable."). We anticipate this rigorous analysis will involve some assessment of the parties' factual contentions. *Mattson II*, ¶ 67 (trial judge must "resolve[ ] factual disputes relevant to each Rule 23 requirement"). Those facts may even touch on the merits of the plaintiff's cause of action. *Worledge*, ¶ 23; *Sangwin*, ¶ 15 (citing *Comcast*, ___ U.S. at ___, 133 S. Ct. at 1432); *Chipman*, ¶ 44 (citing *Wal-Mart*, 564 U.S. at 351, 131 S. Ct. at 2551).

¶18     Second, beyond this essential evidentiary basis, the trial court has broad discretion at the certification stage. *Worledge*, ¶ 14; *Sangwin*, ¶ 15 (trial court must be "'satisfied, after a rigorous analysis, the prerequisites of Rule 23(a) are met'") (quoting *Comcast*, ___ U.S. at ___, 133 S. Ct. at 1432); *Jacobsen*, ¶ 29 (trial court has discretion to establish scope of discovery and hold evidentiary hearing before certification). While we are deferential to a trial court's determinations regarding satisfaction of the Rule 23 requirements, we cannot affirm certification of a class when the record lacks evidence supporting a determination on a Rule 23 requirement. To hold otherwise would reduce the concept of "rigorous analysis" to a nullity. *See Comcast*, ___ U.S. at ___, 133 S. Ct.

9

at 1433.  It would also mean the proposed class's "burden" to satisfy the requirements of Rule 23 is no burden at all.

¶19    "We have a 'long history of relying on federal jurisprudence when interpreting the class certification requirements of Rule 23.'" *Jacobsen*, ¶ 32 (quoting *Chipman*, ¶ 52). The U.S. Supreme Court has never clearly defined the burden of proof at certification, and federal courts are divided on the question. 3 William B. Rubenstein et al., *Newberg on Class Actions* § 7:21 (5th ed. 2013) [hereinafter 3 Rubenstein].  In recent years, the burden has trended toward more proof, with several circuits adopting the familiar preponderance of the evidence standard. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *see also* 3 Rubenstein, § 7:21.  In light of the discussion that follows, we need not adopt a specific standard today, but we do recognize that certification requires at least some evidence to satisfy each of Rule 23's requirements. With this burden in mind, we turn to the four prerequisites of Rule 23(a).

### A. Numerosity

¶20    A proposed class must be "so numerous that joinder of all members is impracticable." M. R. Civ. P. 23(a)(1).  There is no "bright-line number" that satisfies numerosity—impracticability must be determined on a case-by-case basis. *Morrow*, ¶ 9. It is well established that the proposed class "'must present some evidence of, or reasonably estimate, the number of class members.'" *Sangwin*, ¶ 17 (quoting *Diaz I*, ¶ 31).

¶21   Here, USAA admitted in a discovery response that 154 claims from Montana insureds were submitted to AIS from January 2012 through September 2015.   The District Court concluded that this volume of claims, which represented only a fraction of the eight-year timeframe at issue, satisfied numerosity.   USAA argues that this number does not actually represent the size of the proposed class, because the class is defined to include only those claimants who were denied coverage in whole or in part.

¶22   USAA has resisted Plaintiffs' efforts to discover the number of denied claims, maintaining that a burdensome "line-by-line review in every file" would be necessary to determine which claimants were denied benefits.   When the District Court certified the class, Plaintiffs had not yet filed a motion to compel discovery pursuant to M. R. Civ. P. 37.   Although Plaintiffs subsequently filed a motion to compel, the District Court has not yet ruled upon the motion.[1]   Because the District Court had not yet considered the merits of the parties' arguments for and against discovery, we will not wade into the parties' apparent discovery dispute.

¶23   The District Court has broad discretion to establish the scope of certification-related discovery.  3 Rubenstein, § 7:4.  Here, the District Court has not yet established that scope, and very little certification-related discovery is present in the record.  As a consequence, we have no evidence of the number of claimants who had their claims denied in whole or in part.  Any attempt to distill the 154 claims down to only those that were denied would be pure speculation.  Moreover, we have no evidence regarding the claims filed or denied in the 2007 to 2012 timeframe.  Because the record

---

[1]  Instead, the District Court granted a USAA motion to stay discovery during this appeal.

lacks evidence or a reasonable means of estimating the size of the class, Plaintiffs have not at this juncture satisfied their burden of proving numerosity. We therefore conclude that the District Court abused its discretion in finding numerosity was satisfied.

¶24    Plaintiffs cite *Roose* for the proposition that a class of one is certifiable if a district court reasonably concludes that other, unidentified, class members exist. In *Roose*, the defendants admitted the insurance policies they had issued contained an exclusion that violated Montana's made whole doctrine. *Roose*, ¶ 23. Although the full extent of the class had not been determined before certification, all policyholders were entitled to equitable and injunctive relief. *Roose*, ¶ 21. Plaintiffs analogize the present case to *Roose* as follows: "in this case, it is known that systematically, USAA refers adjustment of its med pay claims to AIS. AIS, in turn, systematically applies computer algorithms to review the files for any possible means to deny the claims in whole or in part."

¶25    The record before us lacks any mention of an algorithm. In fact, Plaintiffs have provided virtually no evidence of how AIS actually reviews claims. USAA has admitted that all medical payment claims are sent to AIS, but USAA has not conceded that any of its practices are illegal. Unlike the contracts at issue in *Roose*, the systematic conduct that the Plaintiffs allege caused them harm—the AIS computer algorithms—has not been substantiated at this point. *Roose* is therefore inapposite.

### B. Commonality

¶26    Rule 23(a)(2) requires common questions of law or fact. The U.S. Supreme Court has observed that "any competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349, 131 S. Ct. at 2551 (internal quotation omitted).

In *Wal-Mart*, a class of 1.5 million former and current employees of the nation's largest private employer alleged gender discrimination in pay and promotions. *Wal-Mart*, 564 U.S. at 342–43, 131 S. Ct. at 2547. The Court observed that the class unsurprisingly raised certain superficial, common questions, such as: "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay?" *Wal-Mart*, 564 U.S. at 349, 131 S. Ct. at 2551. These questions were an insufficient basis for class certification because they did not "demonstrate that the class members 'have suffered the same injury,'" as commonality requires. *Wal-Mart*, 564 U.S. at 349–50, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157–58, 102 S. Ct. 2364, 2370–71 (1982)). Before *Wal-Mart*, we construed commonality as a "relatively low burden for plaintiffs." *Jacobsen*, ¶ 31 (citing *Diaz I*, ¶ 32). We have since recognized that *Wal-Mart* "significantly tightened the commonality requirement," *Chipman*, ¶ 47, but we have not yet adopted *Wal-Mart* as the standard for commonality in Montana. *Mattson III*, ¶ 37.

¶27    Here, the District Court determined the proposed class satisfied the *Wal-Mart* standard. The District Court quoted *Jacoben*'s observation that *Wal-Mart* is satisfied when the proposed class alleges "that a defendant's programmatic conduct violates the law." *Jacobsen*, ¶ 44. The District Court then certified the class with the following common question: "[w]hether or not USAA violated Montana law with respect to its med-pay claims handling practices." Because the class as defined included only those claimants who "had their claim denied in whole or in part following a 'file review' by AIS or because of an asserted 'coding error,'" we can infer that the District Court

determined the AIS review process was the "programmatic conduct" that satisfied commonality.

¶28    In *Jacobsen*, the plaintiff class submitted evidence of a specific, programmatic, claims handling practice, the existence of which was undisputed.  A consulting firm had advised Allstate that insureds represented by an attorney typically settled claims for double or triple the cost of an unrepresented insured's claims. *Jacobsen*, ¶ 19.  To reduce costs, Allstate implemented a new claims handling process whereby adjusters intimated to unrepresented claimants that they would recover more from their claim if they proceeded without an attorney. *Jacobsen*, ¶ 24.  The uniform application of this process allegedly caused each class member damages in the form of reduced settlement values.

¶29    Here, the mere act of sending claims to an outside contractor like AIS—without more—is not the type of programmatic conduct that satisfies *Jacobsen* and *Wal-Mart*. The question of whether all class members had claims reviewed by AIS is precisely the type of superficial question that fails to demonstrate a common injury.  To satisfy commonality, the question would have to address the common injury allegedly shared across the class.  In other words, the question would have to identify the allegedly unlawful, systematic program in place at AIS that causes the denials, just as the plaintiffs in *Jacobsen* identified the specific claims handling process that led to diminished settlement values for each class member.

¶30    On appeal, Plaintiffs argue that AIS applies an algorithm to process and ultimately deny medical claims in whole or in part.  Nothing in the record supports this claim, and the District Court did not mention an algorithm in its certification order.  Plaintiffs

contend that the present action alleges essentially the same programmatic conduct as *Horton* and *MySpine*. We find Plaintiffs' analogy to these cases unpersuasive. Because Plaintiffs have submitted only excerpts from these cases, the record lacks sufficient context to determine whether the claims are actually similar. The excerpt from *Horton* and the NAIC memo explaining it make clear the excerpt was not from a final settlement agreement. Indeed, nothing in the record indicates *Horton* was ever settled. Further, the *MySpine* excerpt does not mention AIS file reviews. While *MySpine* addresses claims denied for certain "reason codes," the record does not indicate whether these reason codes are related to the coding errors alleged by Plaintiffs. In short, Plaintiffs' reference to these two seemingly unrelated cases does nothing to advance their claims of programmatic conduct connecting Byorth, McKean, and the absent class members.

¶31    Plaintiffs also encourage us to take judicial notice of an article from the San Antonio Express-News that claims USAA has been "dogged by lawsuits" that take issue with the company's handling of medical payments. This article was never submitted to the District Court and did not serve as a basis for certification. Moreover, judicial notice of the article is wholly inappropriate here: the facts explained in the article were not generally known in the District Court's jurisdiction, nor were the facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," as judicial notice requires. M. R. Evid. 201(b). We also note that the article focused on the present case and quoted Plaintiffs' counsel extensively. We will not take judicial notice of facts alleged by Plaintiffs' counsel simply because they were printed in a newspaper.

¶32   Upon a full review of the record presently before us, we cannot locate any evidence of the alleged algorithm employed by AIS to systematically deny claims. In fact, the AIS reviews of McKean's claims that USAA attached to its brief in opposition to certification include a physician's analysis of documents submitted with the claim. If anything, this evidence tends to show an individualized review, rather than a systematically-applied algorithm. Throughout their brief, Plaintiffs cite their complaint and the District Court's certification order as evidence of systematic claims handling processes. As previously explained, the Plaintiffs' complaint is not a sufficient basis for class certification. *See Chipman*, ¶ 44 ("Rule 23 does not set forth a mere pleading standard." (internal quotation marks omitted)). Similarly, the District Court's order does not direct us to evidence in the record supporting certification. Because the record lacks an evidentiary basis for finding commonality, we conclude that the District Court abused its discretion by granting certification before the proposed class had met its burden of showing commonality. Because this case comes before us with minimal discovery, we leave it to the District Court to determine whether Plaintiffs can demonstrate, after additional discovery, a common injury through an algorithm or some other programmatic conduct.

### C. Typicality

¶33   The typicality requirement of Rule 23(a)(3) ensures the named class members' interests align with the interests of absent class members. *Jacobsen*, ¶ 51 (citing *Mattson III*, ¶ 21). This alignment occurs when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." M. R. Civ. P. 23(a)(3).

"Typicality is not a demanding standard." *Worledge*, ¶ 34 (citing *Sangwin*, ¶ 21). If the class claims are based on the "same event, practice, or course of conduct" and "the same legal or remedial theory," typicality is satisfied. *Worledge*, ¶ 34 (internal quotation marks omitted). Moreover, the event, practice, or course of conduct need not be identical for all members of the class. *Worledge*, ¶ 34.

¶34    Typicality and commonality tend to overlap, as both measure the relationship of the members' class claims. *Worledge*, ¶ 34. The difference between typicality and commonality is a matter of perspective: commonality looks to the questions of law or fact common to the class as a whole, while typicality focuses more closely on the named representatives' relationship to the rest of the class. 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3:31 (5th ed. 2011) [hereinafter 1 Rubenstein].

¶35    In its certification order, the District Court stated that USAA did not dispute typicality. On appeal, USAA directs us to three pages of its brief opposing certification wherein the company argues that Byorth is not a member of the class and McKean's claims are not "co-extensive" with the class. USAA reasons that, because Byorth eventually received the maximum benefit provided under his policy, he is not a member of the class of claimants who had claims denied in whole or in part. As for McKean, USAA notes that McKean does not allege that a coding error was the cause of her benefit denial. Therefore, USAA argues that McKean's claims are not co-extensive with those of the larger class of claimants who were denied coverage due to an AIS file review *or* an asserted coding error.

¶36   Plaintiffs' complaint alleges several counts, including violations of the UTPA for misrepresenting pertinent facts or insurance policy provisions, refusing to pay claims without conducting a reasonable investigation, and failing to promptly settle claims once liability became reasonably clear.   Assuming Plaintiffs can satisfy commonality with a showing of the alleged algorithm, the class UTPA claim will be shared across all members of the class, including the named representatives, Byorth and McKean.   The fact that Byorth eventually received what he was owed under the contract does not absolve USAA of the alleged UTPA violations.   *See McVey v. USAA Cas. Ins. Co.,* 2013 MT 346, ¶¶ 24–25, 372 Mont. 511, 313 P.3d 191 (eventual payment does not shield insurer from UTPA liability); *Lorang v. Fortis Ins. Co.,* 2008 MT 252, ¶ 149, 345 Mont. 12, 192 P.3d 186.   Because Byorth is a member of the class, and he has alleged that a coding error resulted in denial of benefits, the two representative class members' claims are reasonably co-extensive with the class as a whole.

¶37   We reiterate that the record before us lacks evidence of the alleged programmatic conduct used by AIS to injure the class as a whole, which must be shown to establish commonality.   Because typicality and commonality overlap to the extent both are measured by the reach of common questions of law or fact, we cannot overlook the fact that the record does not contain evidence of the alleged common question that unites not only the class as a whole, but also the named representatives with the absent class members.   We therefore conclude that the District Court abused its discretion in finding typicality satisfied, though not for the reasons claimed by USAA.   We leave it to the

District Court to determine, with the benefit of additional discovery, whether Plaintiffs can satisfy typicality.

### D. Adequacy

¶38   Rule 23(a)(4) ensures "the representative parties will fairly and adequately protect the interests of the class." M. R. Civ. P. 23(a)(4). This portion of Rule 23 looks to the attorney representing the class, who must "be qualified, experienced, and generally capable" of conducting the class action. *Jacobsen*, ¶ 58 (internal quotation marks omitted). Adequacy also prevents certification of a class if the representative parties' interests are "antagonistic to the class interests." *Worledge*, ¶ 39; *accord* 1 Rubenstein, § 3:54.

¶39   USAA does not dispute adequacy on appeal. In a footnote to its opening brief, USAA reserves a potential challenge to the adequacy of the named representatives until it has taken discovery from Plaintiffs. Because we remand for additional discovery, we decline to address adequacy further at this juncture.

¶40   *2.   Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(b)(3)?*

¶41   After a proposed class has shown it satisfies the four elements of Rule 23(a), a district court may certify the class if it fits within one of the class categories provided in Rule 23(b). The Rule 23(b)(3) class is appropriate only if "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." M. R. Civ. P. 23(b)(3). These dual

requirements of Rule 23(b)(3) are commonly referred to as predominance and superiority. Regardless of the category of class action a district court chooses, the court must conduct a rigorous analysis of all Rule 23 requirements, including Rule 23(b). *Comcast*, ___ U.S. at ___, 133 S. Ct. at 1432 (noting that the analytical principles that govern Rule 23(a) also govern Rule 23(b)).

¶42    Here, the District Court did not mention Rule 23(b) until the penultimate page of its certification order.  Even then, the District Court did so in passing: "Under Mont. R. Civ. P. 23(b)(3) the Court certifies the following class . . . ." It is unclear whether the District Court undertook any analysis in determining that the class satisfied Rule 23(b)(3).  We therefore conclude the District Court abused its discretion by certifying the class under Rule 23(b)(3) without assessing predominance and superiority.

¶43    USAA urges us to conclude that the record shows the proposed class could never satisfy the predominance and superiority requirements of Rule 23(b)(3).  USAA reasons that each class member's claims involve individualized determinations of medical reasonableness and necessity, and that these individual questions would predominate over common questions.  USAA also maintains that the claims Plaintiffs have raised here are frequently litigated on an individual basis, making the class action an unnecessary and inferior method of resolution.  Because the District Court has not analyzed these arguments, we will not entertain them on appeal.  We therefore remand to the District Court to consider the parties' evidence and arguments regarding Rule 23(b)(3).

## CONCLUSION

¶44     For the reasons stated above, we reverse the order of the District Court granting

class certification.  We remand for further certification-related discovery and an analysis

of the Rule 23(b) requirements.  To be clear, we do not conclude that the class could

never be certified.  Rather, the District Court may certify the class provided Plaintiffs

satisfy their burden of showing each Rule 23 requirement is met.

¶45     Reversed and remanded.

_____
                                   Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

21

Justice Michael E Wheat, dissenting.

¶46    I dissent from the majority's decision to reverse the District Court's class certification in this case.  The foundation of all class action suits is consumer protection and judicial economy.  For this reason we have provided the district courts with broad discretion in certifying classes and managing the litigation related thereto.  As we stated in *Roose*, certification orders "'are not frozen once made'; instead, the District Court maintains discretion to alter the class definition as the case proceeds." *Roose*, ¶ 14 (internal citation omitted).

¶47    Here the District Court exercised its broad discretion by certifying a class of Montana consumers who are alleged victims of USAA's acknowledged and long-standing practice of outsourcing claims handling to be conducted by a computer algorithm which is programmed to evaluate medical payment claims.  The District Court invoked its discretion to certify the class based on the facts and arguments presented to it by the parties.  The District Court's order certifying the class demonstrates its clear grasp of the parameters of the case and the obvious need for the court to manage and control the course of litigation.  Therefore, I would affirm the District Court.

¶48    Because the matter is being remanded for further discovery, the District Court will be able to employ its broad discretion in managing the course and scope of discovery.  And, because the discovery will be focused on USAA's claims handling practices and Byroth and McKean's efforts to re-establish class certification, I would encourage the court to schedule a discovery conference as provided by M. R. Civ. P. 16 and 26 so the parties will fully understand the court's procedural expectations.

22

_____
                    Justice

Chief Justice Mike McGrath joins the Dissent of Justice Michael E Wheat.

_____
                    Chief Justice