IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

**FILED**

9/3/2019

Clerk, U.S. District Court
District of Montana
Helena Division

| | |
|---|---|
| PETER BYORTH and ANN McKEAN, on behalf of themselves and all those similarly situated, | CV 17-153-BLG-TJC |
| Plaintiffs, | |
| vs. | **ORDER** |
| USAA CASUALTY INSURANCE COMPANY and JOHN DOES I-X, | |
| Defendant. | |

Plaintiffs Peter Byorth and Ann McKean ("Plaintiffs") bring this putative class action against USAA Casualty Insurance Company ("USAA"), alleging USAA improperly administered medical payment insurance benefits and wrongfully denied coverage to Montana consumers.  Plaintiffs assert five counts against USAA: (1) breach of fiduciary duty[1]; (2) breach of contract; (3) violation of Montana's Unfair Trade Practices Act ("MUTPA"); (4) punitive damages; and (5) declaratory and injunctive relief.  Presently before the Court is Plaintiffs' Motion for Class Certification.  (Doc. 92.)

/ / /

---

[1] The Plaintiffs have consented to dismissal of their claim for breach of fiduciary duty.  *See* Doc. 130 at 10.

1

## I.        Background

On September 25, 2011, Byorth was struck by a motor vehicle while riding

his bicycle.  Byorth was insured at the time of the incident by USAA under a

policy providing him with $10,000 in "MedPay" coverage.  Byorth submitted

claims for his medical bills totaling $85,000 to USAA.  USAA referred the claims

to Auto Injury Solutions ("AIS") for review under a Medical Bill Audit ("MBA")

process.  USAA initially denied Byorth's claims as not medically necessary and

because of alleged coding errors.  But USAA eventually paid Byorth's claims up to

the policy limits.

On February 10, 2014, McKean was injured in a motor vehicle accident.

McKean was insured by USAA at the time of the accident under a policy that

provided $30,000 in MedPay coverage.  McKean submitted her claims for medical

bill payment to USAA, which USAA provided to AIS for review under the MBA

process.  USAA denied some of McKean's claims as not medically necessary, and

reduced the reimbursement amount for others because they were not reasonable or

were in excess of preferred provider rates.

Plaintiffs contend they were both injured by USAA's claims processing

practices, which they allege denies or reduces payment to its insureds in violation

of the policy and the MUTPA.  Specifically, Plaintiffs argue USAA's processing

practices fails to "reasonably investigate" the claims submitted by its insureds, in

violation of Mont. Code Ann. § 33-18-201[2] and the policy.[3]  Plaintiffs allege

USAA implemented its unlawful practice by contracting with AIS, who provides

an "automated, third-party bill reviewing service[], that eliminate[s] the need for

the insurer's adjuster or claims representative undertaking any individual or

personal investigation and evaluation of reasonable and necessary medical

expenses submitted on MedPay claims."  (Doc. 118 at 8.)  AIS allegedly

automatically denies or reduces payment by applying preset flags, codes, and other

criteria.  *Id.* at 9.  This alleged practice – the automatic denial or reduction of

claims without conducting a reasonable investigation – is the focus of this action.

     Specifically, Plaintiffs allege the following practices violate the UTPA and the

policy:

     *"RF" Denials:* Plaintiffs allege that USAA directs AIS to program its

computerized review to compare the amount billed by providers for a specific CPT

code with the 80th percentile of charges for the same CPT procedure, and then

---

[2] "A person may not, with such frequency as to indicate a general business practice, do any of the following: . . . (4) refuse to pay claims without conducting a reasonable investigation based upon all available information[.]"  Mont. Code Ann. § 33-18-201(4).

[3] Plaintiffs allege USAA "implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of first-party Med Pay benefits."  Plaintiffs also allege USAA breached the policies by "utilizing a system designed to reject claims without a reasonable investigation based upon all available information[.]"  (Doc. 118 at 19-20.)

automatically deny payment of any amount that is more than $9.99 above the 80th percentile.  Plaintiffs allege USAA's adjusters do not investigate the provider's charges or determine "the reasonable fee" for that provider's services before reducing payment on the claim.

*"PPO" Denials:* Plaintiffs allege USAA directs AIS to program its computer to automatically deny full payment of providers' bills, and instead pay a lower rate based upon undisclosed Preferred Provider Organization ("PPO") agreements, even though the providers have no agreements with USAA to accept the lower PPO rate.  Plaintiffs allege USAA's adjusters do not investigate whether the providers agreed to the PPO rates before reducing payment on the claim.

*"DOC" Denials:* Plaintiffs allege USAA directs AIS to program its computer to automatically flag and "deny" payment of medical bills if certain documents are not attached to the bills.  Instead of paying the claim, requests are sent to the insured or provider to submit additional documentation.  Plaintiffs allege such "denials" are made without USAA's adjuster conducting any investigating whether the documentation was needed to substantiate the necessity of the billed treatments.

*"Duration of Care" Denials:* Plaintiffs allege USAA directs AIS to program its computerized review to automatically flag and "deny" bills for certain CPT codes based on "duration of care" if the treatment exceeds the 12th similar

4

treatment on the same claim.  If a claim is flagged for this reason, it is forwarded to a medical professional for review.  Plaintiffs claim the "denials" are made automatically by the computer without USAA's adjuster conducting any investigation of whether the treatments were necessary.  Instead, the flagged procedures are automatically sent by the computer to an AIS nurse or physician for review.

*"90-Day Gap in Care" Denials:* Plaintiffs allege USAA directs AIS to conduct its computerized review to "deny" payment of medical bills if the treatment occurred more than 90 days after the accident or the last treatment received by the insureds. If a claim is flagged for this reason, it is forwarded to a medical professional for review.  Plaintiffs contend the flagged procedures are automatically sent to AIS physicians for review without any investigations by USAA's adjusters of the necessity for the treatments.

Plaintiffs originally filed this action in state court on April 24, 2015, and USAA initially removed the case to federal court on June 10, 2015.  *See Byorth v. USAA Casualty Ins. Co.*, 15-cv-51-BMM (D. Mont. 2015).  Upon determining it did not have jurisdiction over the matter, this Court remanded the case to state district court.  Plaintiffs then filed a motion to certify class, which the state district court granted.  On appeal, the Montana Supreme Court found the district court

abused its discretion in granting certification.  *See Byorth v. USAA Casualty Ins. Co.*, 384 P.3d 455 (Mont. 2016).

On October 23, 2017, Plaintiffs filed their First Amended Complaint in state court.  USAA again removed the case to federal court on November 17, 2017. (Doc. 1.)  On April 29, 2019, Plaintiffs filed their Second Amended Complaint. (Doc. 118.)  Although filed prior to their Second Amended Complaint, Plaintiffs' motion in support of class certification concern the allegations in the Second Amended Complaint.

## II.   Legal Standard

The Court's decision to certify a class action is guided by Fed. R. Civ. P. 23. The party requesting certification bears the burden of proving by a preponderance of the evidence that all requirements for class certification are met.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398 (2014).  Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The plaintiff must "affirmatively demonstrate" the rule's requirements are met.  *Id.*  Therefore, the Court cannot accept the allegations in Plaintiffs' complaint as true; Plaintiffs must prove Rule 23's requirements are "in fact" satisfied.  *Id.* at 349; *Brown v. Elextrolux Home Products, Inc.*, 817 F.3d 1225, 1233-34 (11th Cir. 2016).  *See also*, *Ellis v. Costco Wholsesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (finding the district court applied "impermissible legal

criteria" by accepting the allegations in the complaint as true, rather than "resolving the critical factual disputes" overlapping with the Rule 23(a) requirements.)

The Court cannot certify a class unless all requirements of Rule 23(a), and one requirement of Rule 23(b), are satisfied. *Dukes*, 564 U.S. at 345. Rule 23(a) requires the plaintiff to prove the proposed class is (1) sufficiently numerous (numerosity); (2) the action involves questions of law or fact common to the class (commonality); (3) the class representative's claims and defenses are typical of the class (typicality); and (4) the representative will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). The Court cannot find these factors to be satisfied without "significant proof[.]" *Ellis*, 657 F.3d at 983. "[P]roper analysis under Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 321 (10th Cir. 2008).

In addition to satisfying these requirements, the plaintiff must also meet at least one of Rule 23(b)'s requirements. Fed. R. Civ. P. 23(b); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs request certification under Rule 23(b)(2) and Rule 23(b)(3).

Certification under Rule 23(b)(2) is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) may be satisfied if

"class members complain of a pattern or practice that is generally applicable to the

class as a whole."  *Rodriguez v. Hayes*, 591 F.3d 1105. 1125 (9th Cir. 2010).  "The

key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

remedy warranted – the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them."

*Dukes*, 564 U.S. at 360 (internal quotations omitted).

A 23(b)(2) class can only be authorized if one declaratory or injunctive

remedy would relieve each class member; 23(b)(2) is not applicable when

individual class members "would be entitled to a different injunction or declaratory

judgment against the defendant."  *Id.*  Additionally, certification under 23(b)(2) is

inappropriate "when each class member would be entitled to an individualized

award of monetary damages," or where the court would be required to make

individual determinations of class membership and liability.  *Id.* at 361; *Jamie S. v.*

*Milwaukee Pub. Schools*, 668 F.3d 481, 499 (7th Cir. 2012).

Nevertheless, requests for monetary damages may be permissible under Rule

23(b)(2), so long as they are incidental to the litigation, and do not require an

individualized determination.  *Dukes*, 564 U.S. at 360-62.  But courts "should be

cautious to certify a 23(b)(2) class where significant monetary damages are

8

available – and consequently may become unavailable if class litigation is unsuccessful – because Rule 23(b)(2) does not provide class members with an absolute right of notice or the right to opt-out of the class." *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 486 (D. Colo. 2007).

Plaintiffs also seek certification under Rule 23(b)(3).  The Court may certify a class under Rule 23(b)(3) if "the court finds that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication.  These requirements serve to promote judicial economy and efficiency by uniformly adjudicating an issue raised by similarly situated class members. *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  The Ninth Circuit has held that "common questions of fact do not predominate where an individualized case must be made for each member[.]" *Mazza v. American Honda Motor  Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012).

As opposed to (b)(2) classes, "the (b)(3) class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances; and to withdraw from the class at their option.'" *Dukes*, 564 U.S. at 362 (citing Fed. R. Civ P. 23(c)(2)(B)).

In considering certification, the Court must engage in a "rigorous analysis." *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005).  "Merits

questions may be considered [at the certification stage] to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  See also, *Dukes*, 564 U.S. at 351 (noting the merits of the underlying claims may unavoidably intrude into the Rule 23 analysis); and *Ellis*, 657 F.3d 970, 981 (9th Cir. 2011) ("a district court *must* consider the merits if they overlap with the Rule 23(a) requirements . . . and resolve factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole.") (Emphasis in original.) Whether to grant class certification is left to the court's discretion. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).

## III.   Discussion

Plaintiffs seek certification of the following five classes:

(1)   *The RF Class:* All USAA insureds who, from the starting date of the applicable statute of limitations to present, submitted a MedPay claim for payment of a medical bill and had full payment denied for one or more bill lines based on an "RF" reason code, including an "RF_2," "RF_3," or "RF_2_26" or similar "RF" code, which was defined in the EOR to mean that the charge exceeded a reasonable amount for the service provided;

(2)   *The PPO Class:* All USAA insureds who, from the starting date of the applicable statute of limitations to present, submitted a MedPay claim for payment of a medical bill and had full payment denied for one or more bill lines based on a "PPO" or similar reason code, which was defined in the EOR to mean that the charge exceeded an allowable rate set by databases containing PPO rates;

(3)   *The DOC Class:* All USAA insureds who, from the starting date of the applicable statute of limitations to present, submitted a MedPay claim for payment of a medical bill and had a payment denied for one or more bill lines based on a "DOC 55," "DOC 59" or similar code, which was defined in the EOR to mean the documentation submitted did not substantiate the need for the billed treatment;

(4)   *The Duration of Care or Gap in Care Class:* All USAA insureds who, from the starting date of the applicable statute of limitations to present, submitted a MedPay claim for payment of a medical bill and had payment denied for one or more bill lines based on a "PR 48," "PR 167," "PR 168," "PR 172," "PR 176" or similar reason code in the EOR and the insured's electronic claim file shows an "auto move" of the bill line for further review due to "duration of care," "gap in treatment," or similar annotation; and

(5)   All Montanans presently insured under USAA MedPay policies.

(Doc. 92 at 2-3.)

### A.   Rule 23(a)

Under Fed. R. Civ. P. 23(c)(5), "a class may be divided into subclasses that are each treated as a class under the rule."  "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).  Plaintiffs have not attempted to show that each subclass meets the requirements of each 23(a) factor.  Rather, in their brief in support of their Motion to Certify Class, Plaintiffs discuss the factors generally, without application to each specific subclass.  *See generally,* Doc. 93.  Nevertheless, the Court is required to

review each of the proposed subclasses to determine whether Plaintiffs' showing

satisfies the requirements of Rule 23(a).

    *1. Numerosity*

The numerosity requirement is satisfied when the class presented is so large

that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  An exact

number of members is not required to adequately plead numerosity; a reasonable

estimate is sufficient.  *Burton v. Mountain West Farm Bureau Mut. Ins. Co.*, 214

F.R.D. 599, 608 (D. Mont. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935

(2d Cir. 1993)).  Nevertheless, a conclusory allegation is not a reasonable estimate.

*Ziedman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

When proposing subclasses, the plaintiff must show numerosity is met for each

subclass.  *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d. Cir. 2012)

(finding district court abused its discretion in certifying class without a showing of

the number of members of a state-wide subclass).

Plaintiffs estimate the class to include hundreds of USAA insureds across

Montana.  Plaintiffs claim this number is supported by USAA's Notice of

Removal, where USAA acknowledged the class would consist of "at least 100

class members."  (Doc. 1 at 6-7; Doc. 93 at 31.)  The Notice of Removal states

"over 100 Montana consumers submitted claims in which AIS provided services in

assistance of the medical bill audit process and in which USAA CIC paid less than the submitted amount." (Doc. 1 at 7.)

These criteria, however, do not match the limitations outlined in Plaintiffs' proposed classes. Rather, the Notice of Removal relies on the defined class in Plaintiffs' First Amended Complaint, and that defined class is substantially broader than the proposed class in Plaintiffs' Second Amended Complaint, and from the proposed classes in the instant motion. *Id.* The Court therefore cannot infer numerosity is met based upon the First Amended Complaint's proposed class because the instant proposed classes are defined more narrowly. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (finding the district court's speculation as to numerosity based on T-Mobile's size and large employee base was insufficient and did not excuse the plaintiffs' failure to produce evidence of numerosity).

Nevertheless, USAA does not challenge the numerosity requirement here. It removed the case to this Court under the Class Action Fairness Act, alleging the class size "easily includes more than 100 members." (Doc. 1 at 8.) The Plaintiffs are also challenging USAA practices on a state-wide basis. Given USAA's lack of opposition and the representations made in its notice of removal, it is reasonable to infer the numerosity requirement has been met. Additionally, the numerosity requirement is relaxed where plaintiffs seek injunctive and declaratory relief.

13

Reasonable inferences arising from plaintiffs' evidence are sufficient.  *Civil Rights Ed. & Enf't Ctr. v. Hospitality Props. Trust*, 317 F.R.D. 91, 100 (N.D. Cal. 2016).

       *2.   Commonality*

Commonality is met through the existence of the "same injury" resulting in a "common contention" that is "capable of classwide resolution . . . in one stroke." *Dukes*, 564 U.S. at 350.  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (Quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).  But even a single common question is sufficient to satisfy the requirement.  *Dukes*, 564 U.S. at 359.  "This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Plaintiffs have identified the following common questions of fact and law relative to each of their proposed subclasses:

(1)    Does USAA condition coverage of MedPay claims using an RF methodology without USAA's adjusters conducting individualized investigations?  Does this practice violate Montana law or breach the policy?

(2)    Does USAA condition coverage of MedPay claims using PPO denials without USAA's adjusters conducting individualized investigations?

Does this practice violate Montana law or breach the policy?

(3)     Does USAA condition coverage of MedPay claims using "DOC" denials without USAA's adjusters conducting individualized investigations that the documents are necessary to substantiate the treatments? Does this practice violate Montana law or breach the policy?

(4)     Does USAA condition coverage using "duration of care" or "12th treatment" denials without USAA's adjusters conducting individualized investigations to determine whether the treatments are necessary? Does this practice violate Montana law or breach the policy?

(5)     Does USAA condition coverage using "90-day gap in care" denials without USAA's adjusters conducting individualized investigations to determine whether the treatments are necessary? Does this practice violate Montana law or breach the policy?

Plaintiffs allege these questions can be answered on a class wide basis because every MedPay claim goes through USAA's MBA process regardless of any differences the claims may have.  Therefore, the legality of that process holds the class' claims together.  (Doc. 93 at 15.)  USAA does not dispute that all of its MedPay claims are processed through AIS under the MBA.

The Court finds that Plaintiffs have sufficiently identified questions of fact that are common to each subclass.  As defined in subclasses one through four, each putative class member had a USAA automobile insurance policy and had one or more MedPay claims denied or reduced.  USAA processed these claims according to the MBA.  That process allegedly resulted in the automatic denial or reduction

15

of payment, in violation of the class members' policy and Montana law.  The
question common to all members in these subclasses is therefore whether USAA
breached the insurance policies and violated Montana law by failing to conduct
individualized investigations for each submitted claim.  Resolution of this question
will also help drive resolution of the claim.

Therefore, Plaintiffs have identified a common injury (the denial or reduction
of benefits); a common contention (the denial of claims without conducting a
reasonable investigation); the common question, according to Plaintiffs, can be
answered on a classwide basis; and it is central to Plaintiffs' claims.  The Court
finds the commonality requirement has been satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the claims and defenses of the named plaintiffs
be "typical" of the those of the rest of the class.  Fed. R. Civ. P. 23(a)(3).  "The test
of typicality is whether other members have the same or similar injury, whether the
action is based on conduct which is not unique to the named plaintiffs, and whether
other class members have been injured by the same course of conduct."  *Hanon v.
Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The Supreme Court has
noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to
merge [because both seek to determine] whether the named plaintiff's claim and

the class claims are so interrelated that interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349, n.5.

Here, Plaintiffs claim they suffered the same injury as all class members as a result of USAA's claims practices – the denial or underpayment of claims. Further, Plaintiffs have submitted exhibits to their brief demonstrating that Byorth's and/or McKean's claims were denied or reduced for reasons identified in each subclass.

While USAA points to some unique characteristics of the claims for both Byorth and McKean, the claims do not need to be substantially identical to the absent class members. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Under the rule's "permissive standards," it is sufficient if the members have the same or similar injury and were injured by the same course of conduct. *Id.* "Thus, '[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id* (quoting *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs have sufficiently alleged and produced evidence to show that Byorth and McKean have similar injuries to the putative class members and were allegedly injured by the same course of conduct. Typicality is therefore met.

/ / /

/ / /

17

### 4. Adequacy of Representation

Rule 23(a)(4) requires the named plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement has been met, courts look to two factors: (1) whether the named plaintiff's counsel is competent to represent the class; and (2) whether there exists any conflict of interest between the class representatives and the rest of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

There is no dispute that Plaintiffs' counsel is competent to handle this matter on behalf of the class. *See,* Docs. 94, 95, 96. It is also unlikely any conflict of interest exists or will arise between the class representatives and class members. Plaintiffs' claims are substantially similar to the class claims, and Plaintiffs have vigorously litigated this matter on behalf of the class thus far. The adequacy of representation requirement is clearly met.

### B.   Rule 23(b)

If the Court finds Plaintiffs have satisfied the prerequisites of Rule 23(a), it must then evaluate whether Plaintiffs have met at least one of the categories under Rule 23(b).[4] The categories are not mutually exclusive, and the Court can certify a

---

[4] As discussed regarding the 23(a) factors, it should be noted that Plaintiffs have not affirmatively shown each subclass meets the requirements of each 23(b) factor. Rather, in their brief in support of their Motion to Certify Class, Plaintiffs discuss the factors generally, without application to each specific subclass. *See generally,* Doc. 93. As the party with the burden to show such requirements are met,

class under more than one subdivision.  *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 353 (N.D. Ill. 2008).  Here, Plaintiffs request that the Court certify four classes under Rule 23(b)(3) and a single class for declaratory and injunctive relief under Rule 23(b)(2).[5]

### 1. Rule 23(b)(3)

Plaintiffs propose certification of their first four classes under Rule 23(b)(3). As discussed above, to certify a class under Rule 23(b)(3), the Court must find "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Court must also determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*  These two factors are referred to as the "predominance" and "superiority" requirements.

#### a. Predominance

The predominance inquiry is more stringent than the commonality criteria under Rule 23(a)(2) and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  Cohesiveness rests on the dominance of common

---

Plaintiffs must establish that each subclass satisfies all of the requirements for certification.

[5] Plaintiffs' proposed definition for the 23(b)(2) class is "all Montanans presently insured under USAA MedPay policies."  (Doc. 92 at 3.)

questions over individual interests in the case.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).  Common questions are those where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class wide proof[,]" while individual questions require class members "to present evidence that varies from member to member." *Id.* (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).

If at least one of the central issues in the case are common to the class and predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages . . . ." *Id.*  But "wide variances in individual actual damages, although insufficient standing alone to justify decertification, further support the . . . conclusion that individual questions predominate over common issues.  *Cole v. Gene by Gene, Ltd.*, 735 Fed. App'x. 368, 369 (9th Cir. 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-35 (2013) (finding predominance not met where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.")

Here, common questions do not predominate over the class members' individual questions.  Plaintiffs' class claims are based on alleged breach of the insurance policy and violation of the MUTPA, specifically Mont. Code Ann. §§

33-18-201(4).  Section 201(4) prohibits "refus[ing] to pay claims without conducting a reasonable investigation based upon all available information."  In order to establish a violation of section 201(4), Plaintiffs will be required to show USAA (i) refused to pay their medpay claim (ii) "without conducting a reasonable investigation based upon all available information," § 33-18-201(4), and (iii) that the violation caused Plaintiffs "actual damages," § 33-18-242(1).  Further, an insurer is not liable under the MUTPA if the insurer had a "reasonable basis in law or in fact for contesting the claim or the amount of the claim[.]" Mont. Code Ann. § 33-18-242 (5).

For their breach of contract claim, Plaintiffs must establish a breach of the insurance contract, and that "the breach of contract proximately caused [] damages, or that the damages likely resulted from the breach of contract." *Tin Cup Cty. Water &/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68 (Mont. 2008) ("[D]amages . . . are subject to limitations of causation, certainty, and foreseeability," and they "clearly must be ascertainable in their nature and origin.")

Individualized issues would predominate over the common issues in both of Plaintiffs' claims, since the evidence required to adjudicate the claims will differ substantially for each class member.  The Court would be required to conduct an inquiry into the adjustment process for each claim to determine whether USAA's process was wrongful as to that claim.

21

In order to determine whether a claim was denied without conducting a reasonable investigation, for example, all information available to the insurer at the time of the denial must be evaluated. As discussed in *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 204 (Mont. 2008), "[a]s the plain statutory language dictates, the issue of whether an insurer's investigation was reasonable requires an analysis of all information available to the insurer when it denied the claim. Therefore, our precedent's hold that the jury must consider, at a minimum, the insurer's own records . . . the jury must be 'aware of everything in the claims file,' such as 'investigative reports, evaluations, and correspondence.'") (citing *Graf v. Continental Western Ins. Co.*, 89 P.3d 22, 27 (Mont. 2004)). The Montana Supreme Court also emphasized that the denial must be evaluated "*in light of the information possessed by the insurer* at the time it adjusted the underlying claim." *Id.* (Emphasis belongs to the court.) Thus, each member's claim file would be subject to an individualized review, and "mini trials" would be required to determine the reasonableness of USAA's investigation as to each claim.

Additionally, proving the elements of a MUTPA claim would require Plaintiffs to show USAA's processing scheme resulted in damages to the class members. But the criteria for establishing damages under the MUTPA are individualized. Damages are only awarded under the MUTPA where the claimant's damages were proximately caused by the MUTPA violation. Mont.

Code Ann. § 33-18-242 (4).  Addressing this issues would require an individualized determination of what services were performed; what amount was billed for those services; was that amount reasonable; how much did USAA pay toward the bill; and did the health care provider bill the claimant for the remaining balance?  These individualized inquiries tend to negate predominance.

Plaintiffs' breach of contract claim also raises individual questions; did USAA's claims process breach the policy for each claim, and did each member suffer damages as a result?

These individualized questions also predominate each of Plaintiff's subclasses.  To determine the "reasonable fee" and "PPO" subclasses, for example, the individualized inquires would include whether the providers accepted the reduced amount as full payment or was the insured subject to balance billing; whether the billed amount constitutes a reasonable charge for the services provided as defined by the policy; whether the amount paid to the provider was reasonable; and whether the class member has released or assigned his or her claims.

As to the "document request" subclass, the request for documents is not a final denial of the claim; it is a request for additional documentation to determine whether the claim is covered.  Nevertheless, individualized inquires under this subclass would include whether the request for documentation was reasonable; whether the insured or their medical provider responded to the request; whether a

medical professional reviewed the bill and recommended payment or denial as a result of the request; and was the claim ultimately paid.

With respect to the "duration-of-care" or "gap-in-care" subclasses, claims within these classes were not denied; the claims were flagged to trigger a medical review prior to payment.  Therefore, each claim flagged for review would require an assessment of the necessity of a medical review; an examination of the physician or nurse's analysis of the medical records and bills; and an evaluation of the recommendation to pay or deny the claim.  The adjuster's ultimate decision to pay or deny the claim would also be subject to review.

Therefore, Plaintiffs' claims present numerous individualized questions which would plainly predominate over common questions.

Plaintiffs rely on *Short v. USAA Casualty Ins. Co.*, 2012 WL 208091 (N.D. Ok. Jan 24, 2012) to support their argument that predominance is satisfied.  That case, however, is readily distinguishable from the instant matter.  In *Short*, the insured filed a motion to amend his complaint to add class claims.  In granting the motion, the court found "[b]ased on Plaintiff's allegations . . . it is likely that common questions predominate over individual questions." *Id.* at *5.  But the standard applied in *Short* is inapposite to the standard the Court must apply here.

In *Short*, the court granted leave to amend, not class certification, based solely on the allegations in the plaintiff's proposed amended complaint.  In doing so, the

24

court declined to consider any of USAA's exhibits opposing leave to amend because such evidence was "outside the pleadings[.]" *Id.* at *2. The court noted USAA's objections to the plaintiff's class claims would be more appropriately discussed during the class certification stage of the proceedings. *Id.* at *3-4. Here, the Court must conduct a "rigorous" analysis and cannot simply accept Plaintiffs' pleadings as true. *Short* is therefore not persuasive authority in determining whether the predominance factor has been satisfied.

### b. Superiority

In addition to predominance, the Court must also consider whether a class action is superior to other forms of adjudication. Since the Court has found that Plaintiffs have not satisfied the predominance requirement, the superiority requirement does not need to be determined. Nevertheless, these claims are subject to individual actions. Contrary to Plaintiffs' argument, individual actions for breach of insurance contracts and violation of the MUTPA are regularly brought in this Court. In fact, two similar cases are currently pending in this Court. *Garner v. USAA GIC et al.*, 19-CV-59-DWM (D. Mont.); *Lorenz v. Garrison*, 18-cv-82-BLG-TJC (D. Mont.). They are also not necessarily of *de minimis* value. Under the MUTPA, plaintiffs can recover not only the benefits under the insurance policy but can also recover general damages and punitive damages in appropriate cases.

25

In addition, if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). But "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). As discussed above, each class member would be required to litigate a number of different issues to establish a breach of the insurance policy or a violation of the MUTA. Additionally, several issues would have to be resolved on an individual basis to establish each member's damages. In short, the case would necessarily require each class member to litigate a host of individual issues to establish the right to recover and the amount of recoverable damages.

Accordingly, the Court finds certification under Rule 23(b)(3) is not appropriate.

### 2. Rule 23(b)(2)

Plaintiffs also seek certification of a single class under Fed. R. Civ. P. 23(b)(2). As noted, the proposed class consists of "all Montanans presently insured under USAA MedPay policies." (Doc. 92 at 3.) Plaintiffs seek declaratory and injunctive relief.

As discussed above, Rule 23(b)(2) only requires that "the party opposing the class ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 338. *See also Rodriguez*, 591 F.3d at 1125 (stating a party can satisfy Rule 23(b)(2) if "class members complain of a pattern or practice that is generally applicable to the class as a whole."). Class certification would not be appropriate under Rule 23(b)(2), however, "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360.

It is not necessary that the conduct challenged by a Rule 23(b)(2) action cause damage to each class member. Rather, Rule 23(b)(2) does not require the Court "to examine the viability or bases of class members' claims from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125. The Ninth Circuit has held that "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id*. Further, concerns of manageability and judicial economy are "irrelevant to 23(b)(2) class actions." *Id.*

27

at 1125-26 (quoting *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993)).

Importantly for this case, certification under Rule 23(b)(2) does not require a finding of predominance or superiority.  In *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998), the Ninth Circuit found "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2).  It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."  The Supreme Court affirmed this principle in *Dukes*, 564 U.S. at 362-63, stating: "[w]hen a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether the class issues predominate or whether class action is a superior method of adjudicating the dispute.  Predominance and superiority are self-evident."

 Under Plaintiffs proposed framework here, their claim for injunctive and declaratory relief does not seek damages.  Their request for declaratory relief would address each class member's complaint that USAA adjusts MedPay claims without conducting an individualized investigation, and their request for injunctive relief would prevent that practice in the future.  Such declaratory and injunctive relief would satisfy Rule 23(b)(2) since the conduct complained of  "is generally applicable to the class as a whole."  *Rodriguez,* 591 F.3d at 1125.  That is, each

28

class member holds a USAA MedPay policy and complains of the same alleged pattern or practice – that USAA does not complete an individualized investigation before (1) paying health care providers a reduced amount, or (2) declining to pay the amount charged altogether.  (Doc. 118 at ¶ 57.)  Moreover, a single injunction or declaratory judgment would provide relief to each member of the class; multiple injunctions or declarations would not be required.  Therefore, certification of a single class under Rule 23(b)(2) seeking declaratory and injunctive relief is appropriate.

USAA argues that 23(b)(2) certification is improper for several reasons.  It contends, for example, that certification is improper because the putative class members MedPay claims have already been investigated and administered. Therefore, USAA maintains, 23(b)(2) certification is inappropriate because these members do not face future harm and are properly considered as a damages class. But this argument ignores that the class members are all current holders of USAA MedPay policies, and they will be subject to USAA's same claims adjustment process should they have any future claims under their policies.

USAA also argues that Rule 23(b) certification is not appropriate because the rule does not authorize certification when members are entitled to an individualized award of damages, citing *Dukes*, 564 U.S. at 360-61.  But unlike *Dukes*, the Plaintiffs do not seek an award of damages, incidental or otherwise, in

connection with their claim for injunctive and declaratory relief.  Consequently,

*Dukes*' admonition that "individualized monetary claim belong in Rule 23(b)(3)" is

inapplicable.

Finally, USAA argues that Plaintiffs' claim for declaratory relief is not

available under Montana's UTPA.  USAA maintains that the MUTPA only

provides relief in the form of monetary damages.  This is the same issue raised in

USAA's motion to dismiss (Doc. 121).  The Court has not ruled on USAA's

motion, and it remains to be determined whether it will impact Plaintiffs' ability to

proceed on its claim for declaratory and injunctive relief.

## IV.   Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Plaintiffs' motion to certify a class action under Fed. R. Civ. P.

23(b)(2) is granted with respect to their claim for declaratory and injunctive relief

in Count V of Plaintiffs' Second Amended Complaint (Doc. 118).  The class will

consist of all current residents of the state of Montana who are currently insured

under a USAA MedPay policy.  The issues to be determined in the action are (1)

whether Plaintiffs are entitled to declaratory judgment that USAA's MedPay

claims handling practices violate Montana law by either reducing or denying

claims without first conducting a reasonable investigation, and (2) whether

Plaintiffs are entitled to an injunction prohibiting such claims practices.

2.      After considering the factors set forth in Fed. R. Civ. P. 23(g)(1)(A),

Plaintiffs' counsel of record in this action are appointed class counsel.

3.      Plaintiffs' motion for class certification is denied in all other respects.

**IT IS ORDERED.**

DATED this 3rd day of September, 2019.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge